IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VATSANA NOUANSISOUHAK, | § | |
| Petitioner, | § | |
| | § | |
| V. | § | No. 3:25-CV-2222-K-BW |
| | § | |
| KRISTI NOEM, SECRETARY OF | § | |
| DEPARTMENT OF HOMELAND | § | |
| SECURITY, et al., | § | |
| Respondents. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Petitioner Vatsana Nouansisouhak, currently held in the custody of U.S.

Immigration and Customs Enforcement ("ICE") at the Prairieland Detention

Center, a facility in this district, has filed an Emergency Petition for a Writ of Habeas

Corpus (Dkt. No. 2 ("Petition" or "Pet.")) and an Emergency Motion for Temporary

Restraining Order ("TRO") and/or Preliminary Injunction (Dkt. No. 4) ("Motion

for Injunctive Relief" ("Mot. Inj.")).  This case has been automatically referred to the

undersigned magistrate judge for pretrial management under 28 U.S.C. § 636(b) and

a standing order of reference.  (*See* Dkt. No. 1.)

Nouansisouhak seeks a preliminary injunction to require his immediate

release from immigration detention, arguing there has been no change in

circumstances and no individual assessment specific to Nouansisouhak that would

make his removal reasonably foreseeable.  (*See generally* Mot. Inj.)  On August 29,

2025, Respondents filed a response to the Motion for Injunctive Relief (Dkt. No. 8

("Resp.")), supported by an Appendix (Dkt. No. 10 ("App.")).  Respondents have

also provided a declaration from Andres Goche, a Deportation Officer for ICE

("Officer Goche") (App. 001-004) ("Goche Declaration"), along with the following

three attachments:

> Attachment 1: U.S. Department of Justice, Immigration and
> Naturalization Service, Order to Show Cause and Notice of Hearing
> (Form I-221) (Jul 23, 1996) (App. 005-008);
>
> Attachment 2: U.S. Department of Justice, Executive Office for
> Immigration Review, Order of the Immigration Judge (May 22, 1997)
> (App. 009-011); and
>
> Attachment 3: U.S. Department of Justice, Executive Office for
> Immigration Review, Board of Immigration Appeals, Order and
> Decision (Jan 29, 1998) (App. 012-015).

Respondents contend that Laos has recently changed its stance regarding the

issuance of travel documents, and "there is now a high probability [that

Nouansisouhak] will be removed in the reasonably foreseeable future pursuant to 8

C.F.R. § 241.13(i)(2), and therefore, he is properly re-detained.  (Resp. at 4-5.)

Nouansisouhak filed a reply on September 8, 2025.  (Dkt. No. 11 ("Reply").)

Accordingly, the Motion for Injunctive Relief is ripe for review.

 In his reply, Nouansisouhak challenges Respondents' position as "nothing

more than a vague 'executive branch assessment' that gives it speculative hope that it

might, remove him at some point," which Nouansisouhak argues is contrary to the

statutes, regulations, and the Constitution. (*See generally* Reply.)  Nouansisouhak's

reply also requests that this matter be set for an evidentiary hearing.  (*See id*. at 6.)

Contemporaneous with his reply, Nouansisouhak also filed a motion for an

evidentiary hearing.  (Dkt. No. 12 ("Mot. Hrg.").)  Among other things, Nouansisouhak challenges the "veracity of Respondents' changed circumstances justification."  (*Id.* at 2-4 (internal quotation marks omitted).)

Based on the relevant filings and applicable law, the undersigned recommends that the Motion for Injunctive Relief (Dkt. No. 4) be **DENIED**.  The undersigned also finds that a hearing is not necessary here, as there are sufficient facts before the Court to make an informed decision.  Accordingly, Nouansisouhak's motion for an evidentiary hearing (Dkt. No. 12) is **DENIED**.

## I. BACKGROUND

Nouansisouhak is a native and citizen of Laos.  (App. 3 ¶ 3.)  He was granted lawful permanent resident status on or about September 28, 1979.  (App. 3 ¶ 4.)  Nouansisouhak was convicted of Burglary of a Habitation in Dallas County, Texas, on October 9, 1994.  (App. 3 ¶ 5.)  He was sentenced to five years of incarceration.  (App. 14.)   A little over a year later, Nouansisouhak was convicted of Unlawful Possession of a Firearm by a Felon in Kaufman County, Texas, on January 31, 1995.  (App. 6.)  Nouansisouhak was sentenced to three years of incarceration.  (App. 14.)

On July 23, 1996, Nouansisouhak was issued a Notice to Appear, and removal proceedings were commenced in immigration court; Nouansisouhak was thereafter taken into ICE custody on February 3, 1997.  (App. 6-8.)  On May 22, 1997, Nouansisouhak was ordered removed by an immigration judge.  (App. 10-11.)  Nouansisouhak appealed the removal order, the appeal was dismissed, and the order became final on January 29, 1998.  (App. 15.)  Thereafter on May 15, 2000,

Nouansisouhak was released pending removal and placed under an Order of Supervision ("OSUP"), because Enforcement and Removal Operations ("ERO") was unable to remove Nouansisouhak at that time.  (App. 3, ¶ 10.)  Under the OSUP, Nouansisouhak was required to report annually.  (*See* Pet. at 1; Mot. Inj. at 1-2.)  Nouansisouhak was detained by ICE on June 23, 2025, when he reported for his annual check-in.  (*Id*.)  According to Respondents, Nouansisouhak was taken into custody because ERO now believes they can remove Nouansisouhak to Laos.  (App. 3, ¶ 11.)

On August 19, 2025, Nouansisouhak filed a petition for a habeas corpus and request for preliminary injunction.  In connection with his habeas corpus claim seeking release, Nouansisouhak alleges that there is no evidence of changed circumstances specific to him that makes his removal reasonably foreseeable and therefore his detention is impermissible.  (Pet. ¶ 43; Mot. Inj. at 3.)  He additionally asserts that ICE did not follow its own regulations when re-detaining him and that he is therefore entitled to immediate release from custody.  (Pet. ¶ 43; Mot. Inj. at 4.)  Respondents assert that circumstances have changed such that there is a significant likelihood that Nouansisouhak will be removed to Laos in the reasonably foreseeable future, all procedural requirements were followed, and therefore, Nouansisouhak's re-detainment is proper.  (Resp. at 3.)  Notably, Nouansisouhak does not contest the determination that he is deportable.

## II. LEGAL STANDARDS

A preliminary injunction is an "extraordinary remedy" which should be granted only if the movant has clearly carried its burden of persuasion. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (stating a preliminary injunction is a "drastic remedy" that "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion"). In deciding whether to issue a preliminary injunction, a district court considers the following:

To obtain a TRO or preliminary injunction, a Plaintiffs must establish (1) likelihood of success on the merits of their claims; (2) substantial threat of irreparable injury if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest in granting the preliminary injunction. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 288 (5th Cir. 2012); *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1298 (Fed. Cir. 2009); *see also Clark v. Bank of Am. NA*, No. 3:12-CV-1277-N-BK, 2012 WL 4795597, at *1 (N.D. Tex. Sept. 7, 2012) (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)), *accepted*, 2012 WL 4793439 (N.D. Tex. Oct. 9, 2012).

The decision of whether to grant or deny a TRO is within the Court's discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017). To show immediate and irreparable harm, a plaintiff must demonstrate it is likely he will suffer irreparable harm in the absence of preliminary relief. *Winter v. Nat. Res. Def Council*, 555 U.S. 7, 20 (2008). However, a "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *United States v.*

*Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). In general, a TRO is not appealable. TROs are "usually effective for only very brief periods of time, far less than the time required for an appeal . . . and are then generally supplanted by appealable temporary or permanent injunctions." *Board of Governors of the Fed. Reserve Sys. v. DLG Fin. Corp.*, 29 F.3d 993, 1000 (5th Cir. 1994).

## III. ANALYSIS

Based on the allegations in the Motion for Injunctive Relief, Respondents' response and attachments thereto, and Nouansisouhak's reply, the undersigned concludes that Nouansisouhak has not demonstrated a substantial likelihood of success on the merits of his claim.

**A.    Respondents have shown changed circumstances such that there is now a significant likelihood that Nouansisouhak may be removed to Laos in the reasonably foreseeable future.**

Nouansisouhak's preliminary injunction motion is largely premised on his habeas claim that he cannot be re-detained or removed to Laos. (*See* Mot. Inj. at 4-5.) There is no dispute that ICE has authority to re-detain noncitizens such as Nouansisouhak when there are changed circumstances such that there is a significant likelihood that the noncitizen may be removed in the reasonable future. Notably, Nouansisouhak is not seeking to prevent or stop the government from removing him to Laos. (*See* Repl. at 25.) Rather, Nouansisouhak argues that his re-detainment is unlawful because Respondents have not shown the requisite changed circumstances; and because Respondents failed to establish that Nouansisouhak received specific

notice of any changed circumstances in his immigration case and a lawful "informal interview" as required by 8 C.F.R. § 241.13(i).  (*Id.* at 20.)

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C. § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of any order of removal. 8 U.S.C. § 1231(a)(1).  However, once that time passes and after "removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute" and the noncitizen must be released.  *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).  Upon release, a noncitizen subject to a final order of removal must comply with certain conditions of release.  8 U.S.C. § 1231(a)(3), (6). The revocation of that release is governed by 8 C.F.R. § 241.13(i), which authorizes ICE to revoke a noncitizen's release for purposes of removal.  Specifically, a noncitizen's release may be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).

Respondents argue that there has been a change in circumstances in this case. (*See* Resp. at 4-5; App. 4, ¶ 12.)  Specifically, Respondents aver that, "[a]s of at least February 14, 2025, Laos has started issuing travel documents for aliens with final orders of removal," and "[s]ince January of 2025, approximately 113 individuals nationwide have been removed to Laos via commercial flights and ICE charter flights."  (App. 4, ¶ 13.)  Furthermore, Officer Goche declares that "[o]n August 26, 2025, [he] completed [Nouansisouhak's] travel document packet and submitted it to

Laos." (*Id.* ¶ 14.)  Officer Goche also declared that "there do not appear to be any impediments to removal," [and] "Nouansisouhak's removal can be effectuated in the near future." (*Id.* ¶ 15.)

Nouansisouhak criticizes ICE's timing to initiate the process to obtain travel documents, suggesting that ICE should have sought to obtain travel documents before it re-detained Nouansisouhak on July 25, 2025. (Repl. at 12.)  Contrary to Nouansisouhak's argument, however, there is no requirement that the government "definitively" have the travel documents in hand and confirmation of a removal flight to properly detain him (*see* Repl. at 4-5). *See* 8 C.F.R. § 241.13(i)(2). Nouansisouhak asserts that to re-detain him, there must be "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." (Repl. at 14-15 (quoting *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).)  But the plain text of § 241.13(i)(2) does not include an "individualized determination" in the manner Nouansisouhak suggests. *See Nguyen v. Noem*, ___ F. Supp. 3d ___, 2025 WL 2737803, at *7 (N.D. Tex. Aug. 10, 2025) ("[T]here must be changed circumstances that there is a significant likelihood that the particular alien may be removed in the reasonably foreseeable future[,] . . . [b]ut it does not follow that there must be changed circumstances that are particular to [the petitioner], such as the respondents having travel documents in hand." (citation omitted)).

Nouansisouhak asserts that it cannot be enough that there are general changes in the government's ability to remove aliens to Laos because an "individualized determination" requires a showing Nouansisouhak's circumstances have changed. (Repl. at 15.)   But, as the Court explained in *Nguyen*, "there is a key distinction between circumstances that are particularized and circumstances that effect a particular person." *Id.* at *7.  Further, "there is no reason that a broad change in circumstances that applies to a broad group of aliens cannot have the effect of changing the circumstances of each of those particular aliens and thus let ICE determine that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id*.  Here, Respondents have demonstrated that there are changed circumstances applicable to Nouansisouhak; it is not necessary to show that these changed circumstances are unique to Nouansisouhak.  *See id*.

Without evidence or anything more than speculation, Nouansisouhak asks the Court to deny the presumption of regularity and find that Respondents are providing inaccurate information.  (*See generally* Mot. Hrg.)  The presumption of regularity supports the official acts of public officers and requires courts to presume that they have properly discharged their official duties.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996); *R.H. Stearns Co. of Boston v. United States*, 291 U.S. 54, 63 (1934) ("[T]he presumption of regularity is subject to be rebutted" and "stands until dislodged"; *see also U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (The presumption applies to government agencies).  Nouansisouhak's bare allegations are not sufficient to rebut the presumption of regularity.

Respondents have shown that they re-detained Nouansisouhak because the previous barriers to removing him to Laos have been eliminated, and it is therefore significantly likely that he can be removed in the reasonably foreseeable future. Other than conclusory assertions challenging the "veracity of Respondents' changed circumstances justification" (Mot. Hrg. at 2-4), Nouansisouhak offers no credible argument to dispute these changed circumstances. (*See generally* Repl.) The petitioner in a habeas proceeding bears the burden of displacing the presumption: "[i]t cannot be argued, without factual support, that the [respondents] failed to do [their] full duty with an intelligent, competent[,] and understanding appreciation of all of [their] . . . obligations." *Bute v. People of State of Ill.*, 333 U.S. 640, 671 (1948).

**B.    Nouansisouhak fails to show that Respondents did not abide by the procedural requirements of 8 C.F.R. §241.13(i)(3) or that he would be entitled to relief even if such violations did occur.**

**1.    Respondents did not violate the procedural requirements of 8 C.F.R. § 241.13(i)(3).**

As noted previously, Nouansisouhak was released from immigration custody in 2000, and has been under an OSUP since that time. (*See* App. 3, ¶ 10.) When Nouansisouhak reported for to ICE for an annual check-in on July 13, 2025, he was detained. (Pet. ¶ 22.) Nouansisouhak asserts that Respondents failed to follow the interview and notice requirements of § 241.13(i)(3). (*See* Pet. ¶¶ 40-42; *see also* Repl. at 19-23.) Upon revocation of a petitioner's supervised release:

> [T]he alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an

opportunity to respond to the reasons for revocation stated in the notification.

8 C.F.R. § 241.13(i)(3).  Respondents contend that they complied with this procedural requirement.  (Resp. at 6; App. 4, ¶ 12.)  Officer Goche declares that, at the time of his arrest, Nouansisouhak was informed that he would be detained because he was subject to a final order of removal and there is now a likelihood of removal to Laos.  (*See* App. 3, ¶ 12.)  Officer Goche further declares that Nouansisouhak was given the opportunity to respond during this informal interview. (*See id*.)  Officer Goche provided this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.  (App. 2 at 1.)  He is familiar with Nouansisouhak's case (App. 3, ¶ 3) and confirms that the respondents abided by the requirements of 8 C.F.R. § 241.13(i)(3) (App. 4, ¶ 12).

Nouansisouhak provides no evidence in support of his claim that procedural requirements were not met.  Other than Nouansisouhak's bare assertion that he "was afforded none of these procedural protections, at least not that he was aware of at the time" (Repl. at 20), there is no basis to find that Respondents did not follow these procedural requirements. As previously explained, Nouansisouhak's allegation alone is not sufficient to rebut the presumption of regularity.  Accordingly, the undersigned finds that Respondents did not violate § 241.13(i)(3).  But, even if Respondents did not fulfill the requirements of § 241.13(i)(2), the error was harmless. And even if it were harmful, release from detention would not be the appropriate remedy.

**2.    Even if Respondents did fail to abide by the requirements of 8 C.F.R. § 241.13(i)(3), any error was harmless.**

Harmless error applies in immigration cases generally.  *See Nguyen*, 2025 WL 2737803, at *5 (citing *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. 2023) (in turn citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted).  The same is true for an agency's procedural violations. *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012).  Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

As an initial matter, these habeas proceedings have afforded Nouansisouhak more procedure than he was due under 8 C.F.R. § 241.13(i)(3).  He was entitled to notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances.  8 C.F.R. § 241.13(i)(3).  Here, he has also had the opportunity to obtain counsel, the opportunity to make a full argument to a federal court for injunctive relief regarding his detention, the opportunity to submit evidence, and the opportunity to respond to Respondents' arguments.

As demonstrated by the record, Nouansisouhak's has clearly been given notice.  Through briefing and declarations, Respondents have fully explained why it is highly likely that Nouansisouhak's removal will occur soon.  (*See generally* Resp., App. 2-4.)  Nouansisouhak is subject to a final order of removal (App. 3 ¶¶ 8-9) and cannot challenge that order here; a travel document has been requested (App. 4 ¶ 14);

- 12 -

and other Laos citizens have been removed recently (App. 4 ¶¶ 13, 15).  Finally, all procedural requirements were followed when Nouansisouhak's prior release was revoked.  (App. 4 ¶ 12.)

Given that Nouansisouhak has had more than a full notice and opportunity to be heard, the undersigned concludes that, even if Respondents failed to abide by Section 241.13(i)(3), the error is now harmless in light of the procedures in this case.

### 3.   Even if Respondents failed to abide by the requirements of 8 C.F.R. § 241.13(i)(3), and the error were harmful, a writ of habeas corpus would not be the appropriate remedy.

Nouansisouhak contends that "when ICE fails to provide the interview and notice required by § 241.13(i), its decision to re-detain is invalid and release is the proper remedy." (Repl. at 23.)  In support of this contention, Nouansisouhak cites various cases, none of which are binding on this court or support his position.  (*See id*. at 23 n.49; *see also* Mot. Inj. at 4 n.4.)  Instead, in each of the cases Nouansisouhak cites, courts found that the informal interview requirement had not been satisfied, but then proceeded to consider whether there in fact were changed circumstances showing a significant likelihood of removal that would justify each alien's re-detention.  (*See id*. (citing *Phan v. Beccerra*, No. 2:25-CV-1757, 2025 WL 1993735, at *4–*5 (E.D. Cal. July 26, 2025); *Nguyen v. Hyde*, No. 25-CV-11470-MJJ, 2025 WL 1725791, at *3 (D. Mass. June 20, 2025); *Hoac v. Beccerra*, No. 25-CV-11471, 2025 WL 1993771, at *4–*5 (E.D. Cal. July 16, 2025).)  In contrast to the cases cited by Nouansisouhak, Respondents have demonstrated changed circumstances and shown

a considerable likelihood that Nouansisouhak's removal will occur in the reasonably foreseeable future.

Further, writs of habeas corpus "[are] available to correct the denial of fundamental constitutional rights, but [they] may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). The failure of officials "to follow their own policies, without more, does not constitute a violation of due process," making a writ of habeas corpus generally not available. *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)); *see also Wilkinson v. Dotson*, 544 U.S. 74, 125 (2005) (finding that error regarding a prisoner's confinement does not mean that release is the appropriate remedy).

In addition, a violation of § 241.13(i)(3) alone cannot justify habeas relief. It is a mere administrative regulation, not required as the result of the Constitution. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272–73 (2010) (distinguishing between ordinary procedural violations and constitutional due-process violations). Nouansisouhak has also failed to explain why the alleged failure to follow the procedures of Section 241.13(i)(3) render his detention itself unlawful. Under the plain language of the regulation, notice and an informal interview are not prerequisites to detention. The regulation contemplates that these procedures will occur after detention begins because notice is to happen "upon revocation" and the initial informal interview occurs "after [the alien's] return to [ICE] Custody." 8 C.F.R. § 241.13(i)(3). The alien may then "submit any evidence or information that

- 14 -

he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id*.

Habeas is limited to grant relief from unlawful imprisonment or custody. *Nguyen*, 2025 WL 2737803, at *7 (citing *Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976)). *Zadvydas* held that courts can review statutory and constitutional challenges to post-removal-period detention, 533 U.S. at 688, but the court lacks jurisdiction over other challenges arising from decisions or actions to commence proceedings, adjudicate cases, or execute removal orders, 8 U.S.C. § 1252(g). Therefore, even if Respondents did not abide by the requirements of § 241.13(i)(3), it does not necessarily follow that the Court must order Respondents to fulfill these administrative requirements through a habeas petition. *Nguyen*, 2025 WL 2737803, at *7.

For all the reasons stated above, Nouansisouhak is not likely to succeed on the merits of his claims. A preliminary injunction should not issue if "the law on the question at the heart of the dispute does not favor [the movant's] position." *La Union Del Pueblo Entero v. FEMA*, 608 F.3d 217, 225 (5th Cir. 2010).

## C.    The remaining preliminary injunction factors do not favor relief.

Nouansisouhak also fails to satisfy the remaining elements for issuance of a preliminary injunction. Although Nouansisouhak makes sweeping and speculative claims that he is "irreparably harmed by the loss of his fundamental liberty (*see generally* Mot. Inj.), the mere fact of his detention pending removal does not entitle him to injunctive relief. Notably, Nouansisouhak does not argue that his removal to

- 15 -

Laos will cause irreparable harm.  In fact, Nouansisouhak admits that he is not attempting to stop his removal and is not afraid of removal to Laos; he is only "afraid of being unnecessarily detained in overcrowded ICE detention."  (Repl. at 3.) For the reasons previously explained, ICE followed its regulations in re-detaining Nouansisouhak in anticipation of removal, and therefore, his detention is not unlawful, and there is no irreparable harm.  *See Mathews v. Diaz*, 426 U.S. 67, 80 (1976) (recognizing that it is well established that detention is a constitutionally valid aspect of the deportation process and that in the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens).

Finally, with respect to the balancing of the equities and public interest, "[t]hese factors merge when the Government is the opposing party."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, the record shows that (1) Nouansisouhak is properly the subject of a final order or removal and the government is entitled to detain aliens in the post-removal period to bring about removal, and (2) both the government and the public at large have a strong interest in the enforcement of the immigration laws and the removal of aliens who are unlawfully present in the United States.  *See id*. at 436 ("There is always a public interest in prompt execution of removal orders: The continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings [Congress] established, and permits and prolongs a continuing violation of United States law." (quotation marks and alterations

omitted)). Thus, the third and fourth factors weigh against granting a preliminary injunction.

### D.    A hearing is not necessary.

The court has discretion to allow development of the record through supplemental briefing, requiring oral argument, or attending conferences. *See Lonchar v. Thomas*, 517 U.S. 314, 326 (1996) (noting that district courts reviewing habeas petitions have discretion to "order expansion of the record," authorize discovery, decide "whether to hold an evidentiary hearing," and generally "expedite proceedings"); *United States v. Garcia-Rodriguez*, 640 F.3d 129, 134 (5th Cir. 2011) ("The district court may conduct a hearing, take testimony, and receive additional evidence, as it deems appropriate, in order to make the necessary factual determinations."); *cf. Gallegos v. Quarterman*, 265 F. App'x 300, 303 (5th Cir. 2008) ("When the district court has sufficient facts before it to make an informed decision on the merits of the habeas petitioner's claim, it does not abuse its discretion in failing to conduct an evidentiary hearing.").

And specifically with respect to preliminary injunctions, it is within a court's discretion whether to hold an evidentiary hearing on a preliminary injunction. *See Heil Trailer Int'l Co. v. Kula*, 542 F. App'x 329, 334 n.17 (5th Cir. 2013) ("Several of our decisions have left open the possibility that the decision to deny a preliminary injunction without an evidentiary hearing (as opposed to granting it) might be entirely within the district court's discretion—even where a genuine factual dispute remains between the parties."); *Fed. Sav. & Loan Ins. v. Dixon*, 835 F.2d 554, 558-59

(5th Cir. 1987) (holding that granting a preliminary injunction without an evidentiary hearing was within district court's discretion).

Nouansisouhak argues that a hearing is necessary to address "ambiguous, factually unsupported, and/or disputed statements made in the Government's response and DO Goche's declaration." (Mot. Hrg. at 2-4.) As discussed above, however, Nouansisouhak's speculative and conclusory assertions are insufficient to rebut the presumption of regularity. Respondents have shown changed circumstances in that the previous barriers to removing Nouansisouhak to Laos have been eliminated, a travel document for Nouansisouhak has been requested, and there is a significant likelihood that Nouansisouhak can be removed in the reasonably foreseeable future.

The dispute regarding the procedural requirements of 8 C.F.R. § 241.13(i)(3) also does not warrant a hearing. Again, Respondents have provided a declaration under the penalty of perjury and clear statements to the Court that they complied with these requirements. The undersigned thus concludes that no hearing is necessary to resolve this dispute and resolves Nouansisouhak's request for a preliminary injunction on the briefing and evidence in the present record. Accordingly, Nouansisouhak's motion for an evidentiary hearing (Dkt. No. 12) is **DENIED**.

## III.  RECOMMENDATION

For the foregoing reasons, Nouansisouhak's Emergency Motion for

Temporary Restraining Order and/or Preliminary Injunction (Dkt. No. 4) should be

**DENIED**.

**SO RECOMMENDED** on October 9, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).